1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11     BILLIE DOAN,                          Case No.  2:22-cv-00084-JDP (SS)

12              Plaintiff,

13         v.                                ORDER

14     KILOLO KIJAKAZI, Acting
       Commissioner of Social Security
15
                Defendant.
16

17         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18  ("Commissioner") finding that she was ineligible to receive Supplemental Security Insurance

19  ("SSI") benefits that she had previously been awarded.  Both parties have moved for summary

20  judgment.  ECF Nos. 14 & 15.  For the reasons discussed below, plaintiff's motion for summary

21  judgment is granted, the Commissioner's motion is denied, and this matter is remanded for

22  immediate payment of benefits.

23                          **Standard of Review**

24         An Administrative Law Judge's ("ALJ") decision denying an application for disability

25  benefits will be upheld if it is supported by substantial evidence in the record and if the correct

26  legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th

27  Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a

28  preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

                                          1

1   support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

2      "The ALJ is responsible for determining credibility, resolving conflicts in medical

3   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

4   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

5   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

6   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court will not affirm on

7   grounds upon which the ALJ did not rely.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)

8   ("We are constrained to review the reasons the ALJ asserts.").

9                                    **Background**

10      Plaintiff was previously awarded SSI benefits under Title XVI of the Social Security Act.

11   Administrative Record ("AR") 26.  On May 15, 2018, the Social Security Administration

12   ("SSA") notified plaintiff that, due to becoming the beneficiary of a special needs trust, she no

13   longer met the resource limitations for SSI and was now ineligible for benefits.  AR 153-88.  The

14   SSA also issued a notice of overpayment, informing plaintiff that she owed $23,306.84 for

15   payments she received for the months of April 2016 through April 2018.  AR 192-96.  After

16   plaintiff's request for reconsideration was denied, plaintiff appeared and testified at a hearing

17   before an administrative law judge ("ALJ").  AR 33-41, 199-202.

18      On May 21, 2019, the ALJ issued an unfavorable decision, finding that plaintiff's special

19   needs trust was a countable resource because it failed "to include proper State(s) Medicaid plan(s)

20   reimbursement requirement"—a requirement of the countable resource trust exemption at 42

21   U.S.C. § 1396p(d)(4)(A).  AR 23-30.  The Appeals Council then denied plaintiff's request for

22   review.  AR 1-7.  She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

23                                    **Analysis**

24      To be eligible for SSI, a claimant must satisfy a financial need requirement.  For

25   unmarried individuals, their countable resources cannot exceed $2,000.  42 U.S.C. § 1382(a)(3);

26   20 C.F.R. § 416.1205(c).  Countable resources include "cash or other liquid assets or any real or

27   personal property that an individual (or spouse, if any) owns and could convert to cash to be used

28   for his or her support and maintenance."  20 C.F.R. § 416.1201.  Although a trust is ordinarily a

1    countable resource, irrevocable special needs trusts are exempted if they meet certain criteria.  42

2    U.S.C. §§ 1382b(e), 1396p(d)(4)(A).  Specifically, section 1396p(d)(4)(A) exempts:

3
4
5
6
7

> A trust containing the assets of an individual under age 65 who is
> disabled (as defined in section 1382c(a)(3) of this title) and which is
> established for the benefit of such individual by the individual, a
> parent, grandparent, legal guardian of the individual, or a court if
> the State will receive all amounts remaining in the trust upon the
> death of such individual up to an amount equal to the total medical
> assistance paid on behalf of the individual under a State plan under
> this subchapter.

8    42 U.S.C. § 1396p(d)(4)(A).

9         In his decision, the ALJ found that plaintiff was a disabled individual under the age of 65

10   and that her special needs trust was established by a court.  AR 28.  The ALJ, however, concluded

11   that the trust was not an exempt resource because it provided "solely for reimbursement to

12   California" for any medical assistance benefits that the state provided to plaintiff.  *Id*. at 28-29.

13   He determined that the trust's failure to provide reimbursement for "any and all states" was

14   contrary to Program Operations Manual System ("POMS") SI 01120.203, which requires that a

15   trust "contain specific language that provides that, upon the death of the individual, the State(s)

16   will receive all amounts remaining in the trust, up to an amount equal to the total amount of

17   medical assistance paid on behalf of the individual under the State Medicaid plan(s)."[1]  *Id*.

18        Plaintiff argues that the trust satisfied section 1396p(d)(4)(A) and that the ALJ improperly

19   relied on POMS guidance to find the special needs trust non-compliant.  ECF No. 14-1.  She

20   contends that, because the statute is unambiguous, POMS is not entitled to deference and

21   therefore the ALJ erred by relying on the manual's guidance.  *Id.* at 8-11.  Alternatively, she

22   argues that even if the statute is ambiguous, POMS impermissibly adds a requirement to the

23   statute.  *Id.* at 11-12.  Finally, she contends that her trust complied with POMS both on its face,

24   because the trust expressly provides that states other than California have a right to

25   reimbursement, and in practice, because California is the only state from which plaintiff has

26   received medical assistance.  *Id*. at 13-15.

27

28        [1] POMS is "an internal agency document used by employees to process claims."  *Carillo-Years v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011).

1      POMS "does not impose judicially enforceable duties" on either the courts or ALJs.

2    *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1073 (9th Cir. 2010).  Nevertheless, it may be

3    'entitled to respect' . . . "to the extent it provides a persuasive interpretation of an ambiguous

4    regulation."  *Carillo-Years*, 671 F.3d at 735.  The Northern District of Ohio recently addressed

5    whether § 1396p(d)(4)(A) is ambiguous and whether POMS's interpretation of that statute is

6    therefore entitled to deference.  In *Huffman v. Comm'r of Soc. Sec.*, No. 3:20-cv-2300, 2022 WL

7    2611425 (N.D. Ohio Apr. 18, 2022), the court observed that:

8
9
10
11
12
13
14
15
> Subsection (d)(4)(A) unambiguously imposes a requirement that a
> benefit recipient who has a special needs trust must ensure that the
> trust must reimburse the state that provides benefits if the individual
> dies while trust assets remain . . . .  If we examine the section more
> broadly, "the State" refers to the particular state which determined
> the Medicaid applicant's eligibility.  But subsection (d)(1) also
> specifies that "For purposes of determining an individual's
> eligibility for, or amount of, benefits under a State plan under this
> title [42 U.S.C. §§ 1396 et seq.] subject to paragraph (4), the rules
> specified in paragraph (3) shall apply to a trust established by such
> individual."  42 U.S.C. § 1396p(d)(1) (alteration in original).  The
> use of the indefinite article "a" denotes that any state may serve in
> the role.  Quite plainly, § 1396p, given common canons of
> construction, refers to both individual states and multiple states.

16
17
18
19
20
21
22
> Such a reading is consistent with 1 U.S.C. § 1's provision that,
> unless the context indicates otherwise, "words importing the
> singular include and apply to several person, parties or things."
> And "words importing the plural include the singular."  *Id*.
> Applying these common, well-established rules of construction, we
> must conclude that when subsection (d)(4)(A) only excepted special
> needs trusts that required reimbursement to "the State," it meant
> that a person who had received benefits from multiple states was
> obligated to ensure that his special needs trust reimbursed the states
> from which benefits were received.  And it also meant that a person
> who received benefits from a single state was obligated to
> reimburse that state.  In other words, the statute plainly required
> that the benefit-providing states be reimbursed; there is no
> ambiguity in that at all.

23
24
25
26
27
> This reading of subsection (d)(4)(A) is consistent with the statute's
> statutory purpose.  Special needs trusts are intended to provide for
> the expenses of disabled individuals that state and federal assistance
> programs do not.  In essence, § 1396p(d)(4)(A) created an incentive
> for states to exclude these resources from an individual's assets in
> determining their eligibility by allowing those states which do
> provide medical benefits to an individual to have a claim on those
> assets should the individual die before the trust is fully distributed.

28
> Accordingly, the statute unambiguously requires that, in order to be
> excluded as a resource, a special needs trust under subsection

4

1          (d)(4)(A) must provide for the payback of medical assistance to a
2          state (plural or singular) that provides benefits.

3    *Id*. at \*6-7 (some internal citations omitted).

4          The court finds *Huffman*'s reasoning persuasive and likewise concludes that section

5    1396p(d)(4)(A) is not ambiguous.  Consequently, the court does not defer to POMS 01120.203 in

6    interpreting § 1396p(d)(4)(A).

7          The statute unambiguously requires that the trust provide for reimbursement to any state

8    that has paid benefits to the trust beneficiary upon their death.  The Commissioner does not

9    dispute that plaintiff has only received medical benefits from California.  Nevertheless, the

10   Commissioner argues that "there was no way of knowing how many states a beneficiary may live

11   in during her lifetime, and allowing a trust to limit reimbursement to a single state would frustrate

12   the purpose of the [special needs trust] exception."  ECF No. 15 at 6.  The first assertion is

13   inaccurate: as the SSA informed plaintiff, SSI recipients are required to report where they live

14   and whether they are eligible for benefits other than SSI, and the SSA is entitled to "redetermine

15   your eligibility when you tell us (or we otherwise learn) of a change in your situation which

16   affects your eligibility or the amount of your benefit."  20 C.F.R. § 416.204; *see* AR 60.  The

17   second assertion would be true in the case where a special needs trust limited reimbursement

18   solely to one state and the beneficiary received medical benefits from another state.  But that

19   scenario is not present here.  In the absence of such facts, the Commissioner's narrow

20   interpretation of the statute and trust language amount to an undue hardship on plaintiff,

21   contravening the humanitarian purpose of the Social Security program and the trust exemption

22   statute itself, which provides for the waiver of any provision that "would work an undue hardship

23   on the individual."  42 U.S.C. § 1396p(d)(5); *see Stephens v. U.S. R.R. Ret. Bd.*, 704 F.3d 587,

24   591 (9th Cir. 2012) ("The Social Security Act 'is remedial and its humanitarian aims necessitate

25   that it be construed broadly and applied liberally.'") (quoting *Adams v. Weinberger*, 521 F.2d

26   656, 659 (2d Cir. 1975)).

27         Consistent with § 1396p(d)(4)(A)'s requirements, paragraph 4.8.1.1 of the trust provided

28   that, upon the death of the beneficiary, the "Trustee shall pay the State of California"—the only

5

1   state that provided medical assistance under any state Medicaid plan—"up to an amount equal to

2   the total medical assistance paid on behalf of the Beneficiary under the State plan." AR 75. And,

3   consistent with the requirement that state Medicaid reimbursement "not be limited to any

4   particular State(s)," the paragraph contains no limiting provision. Additionally, paragraph 5.2

5   provides that "[u]pon termination of the trust . . . [t]he State of California *or any other state* shall

6   be entitled to receive all amounts remaining in the Trust up to an amount equal to the total

7   medical assistance paid on behalf of the Beneficiary under the State plan." AR 76. Finally, in the

8   definition section, the trust expressly defines "the Medi-Cal Program of the State of California

9   [to] include[] any other states's [sic] Medicaid Program equivalent." AR 81. The trust listed the

10  State of California because it had paid benefits to plaintiff, but it complied with § 1396p(d)(4)(A)

11  insofar as it did not exclude any other state from making reimbursement claims upon termination

12  of the trust.

13        Other provisions in the trust support this conclusion. Paragraph 1.2 states that the trust

14  agreement was established for the benefit of an individual with a disability in accordance with

15  § 1396p and POMS SI 01120.199 through 01120.203. AR 66. Paragraph 3.1 states that the

16  purpose of the trust is: "to provide financial aid that is supplemental to, rather than a replacement

17  for, various public benefits available to the Beneficiary, without affecting the benefits that would

18  be available to the Beneficiary if the Trust did not exist." AR 69. Paragraph 3.1 instructs that the

19  special needs trust must be interpreted in light of that purpose and in recognition of the likelihood

20  that termination of public benefits would cause the trust to be depleted and, in turn, deprive

21  plaintiff of essential coverage to "maintain an adequate level of human dignity and humane care."

22  AR 70. Other provisions obligate the trustee to manage the trust in compliance with these laws

23  and in any other manner necessary to preserve plaintiff's eligibility for public benefits. *See*

24  Paragraph 4.5 ("[T]he Trustee shall administer the Trust so as to encourage support and

25  maintenance for the Beneficiary from all available public benefits programs."); Paragraph 4.6

26  ("The Trustee may, in the Trustee discretion, take necessary administrative or legal steps to

27  protect the Beneficiary's eligibility for Medi-Cal and other public benefits programs.").

28

1    Only an unreasonably narrow interpretation of the trust's language supports the

2  conclusion that its effect upon termination would be "to limit reimbursement to a single state."

3  ECF No. 15 at 6.  And such an interpretation conflicts with one of the bedrock principles of trust

4  construction: that it must be read as a whole with the intent of the maker in mind and favoring any

5  interpretation that would avoid forfeiture.  *See Brock v. Hall*, 33 Cal. 2d 885, 887 (1949) ("[T]he

6  duty of the court in all cases of interpretation is to ascertain the intention of the maker from the

7  instrument read as a whole and to give effect thereto if possible."); *Ballard v. MacCallum*, 15 Cal.

8  2d 439, 444 (1940) (explaining that where there are "two possible constructions, one of which

9  leads to a forfeiture and the other avoids it[,] . . . the construction which avoids forfeiture must be

10  made if it is at all possible"); *see also Davidson v. Colvin*, No. CV 12-09968-DFM, 2014 WL

11  934527, at *3 (C.D. Cal. Mar. 10, 2014) ("To the extent there is any ambiguity in the trust's

12  provisions they are clarified by the trust's statement of intent, which expressly states that the trust

13  is intended to comply with federal law governing the requirements for a special needs trust under

14  the SSA.").

15    Accordingly, the ALJ erred in finding that plaintiff's special needs trust was not an

16  exempt asset.  As a result, plaintiff's SSI benefits were improperly terminated, and an

17  overpayment was incorrectly assessed.  Plaintiff is entitled to her full SSI benefits, the payment of

18  any benefits improperly withheld, and the return of any moneys paid due to the erroneous

19  overpayment determination.  Her motion for summary judgment is granted, the Commissioners is

20  denied, and this matter is remanded for immediate payment of benefits.

21    Accordingly, it is hereby ORDERED that:

22    1.  Plaintiff's motion for summary judgment, ECF No. 14, is granted.

23    2.  The Commissioner's cross-motion for summary judgment, ECF No. 15, is denied.

24    3.  The matter is remanded for immediate calculation of benefits.

25    4.  The Clerk of Court is directed to enter judgment in plaintiff's favor.

26

27

28

7

1

2    IT IS SO ORDERED.

3
     Dated:    September 21, 2023
4                                                    JEREMY D. PETERSON
                                                     UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28